UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MAPFRE PRAICO INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**SCOTT M. FAVRE PUBLIC ADJUSTERS, LLC, ET AL.,**<br><br>Defendants. | Civil No. 24-1591 (ADC) |

**OPINION AND ORDER**

Pending before this Court is Scott M. Favre Public Adjuster, LLC's motion to dismiss at **ECF No. 19**. For the reasons set forth below, the motion to dismiss at **ECF No. 19 is GRANTED**.

**I.   Background**

Mapfre Praico Insurance Company ("Mapfre" or "plaintiff") filed the instant complaint against Scott M. Favre Public Adjuster, LLC ("public adjusters"), the Estate of Scott M. Favre, Scott Michael Favre Revocable Trust, Scott Michael Favre Family Trust, as successors in interest of the late Scott M. Favre ("Estate and Trusts," and together with the public adjusters, "defendants"), and other of unnamed defendants under this Court's diversity jurisdiction. **ECF No. 1**. Plaintiff seeks damages under Puerto Rico's general tort statute for defendants' "fraudulent and negligent actions" as public adjusters of the Municipality of Barceloneta, Puerto Rico ("Barceloneta" or "municipality"). *Id*., at 1, 7-9.

According to the complaint, Barceloneta sustained significant property damages during Hurricane María in 2017. Nine days later, Barceloneta filed an insurance claim pursuant to a commercial property insurance policy issued by Mapfre for damages to "approximately nine different properties." **ECF No. 1** at 3-4. Plaintiff "adjusted the… loss in $1,776,167.19."[1] *Id*., at 4. On January 16, 2018, Barceloneta hired the public adjusters to assist with its insurance claim. Two days later, plaintiff offered Barceloneta $1,626,167.19 for its damages, but the municipality rejected the offer. *Id*.

On November 9, 2018, the public adjusters submitted a "partial proof of loss" and repair estimates for 14 covered properties (including bridges, public buildings, school gyms, etc.) claiming approximately $24,000,000 in damages. *Id*., at 4-5 ("damages of $23,093,195.07 and $564,000 respectively."). Plaintiff conducted another round of inspections and made two more advance payments. *Id*., at 5. Unsatisfied, on June 7, 2019, Barceloneta sued its insurer in state court claiming "$60,500,610.07 in property damages and business interruption…." *Id*., at 6. On July 1, 2019, Mapfre separately filed a complaint to have the policy annulled and to recoup the advance payments alleging insurance fraud. *Id*.

The cases were consolidated and Barceloneta dropped the business interruption claim. *Id*. Four years later, on August 15, 2023, the parties to the consolidated state court actions shook hands and moved for dismissal of all claims. *Id*. "As part of the settlement, the Municipality

---

[1] Although plaintiff alleges that $1,776,167.19 was the "adjusted" amount to which Barceloneta was entitled, it also claims that this amount did not account for the advance payments it made. **ECF No. 1** at 4.

agreed, through a sworn proof of loss, that its adjusted property damages were $8,454,805.71." *Id*., at 6. In exchange, Mapfre paid Barceloneta the net amount of $6,788,422.95. *Id*., at 7. The Puerto Rico Court of First Instance entered judgment on August 16, 2023. *Id*.

On December 24, 2024, Mapfre set its gaze upon the public adjusters and filed the instant action.[2] As noted above, plaintiff claims that the fraudulent and negligent actions of Barceloneta's public adjusters caused it damages in an amount not less than $1,350,000.00. *Id*. Plaintiff further alleges that it tolled the applicable statute of limitation via "communications dated January 3, 2024." *Id*.

On May 1, 2025, the Estate and Trusts filed an "answer and defenses." **ECF No. 12**. Among other things, the Estate and Trusts raised a statute of limitations affirmative defense. *Id*., at 2. On July 2, 2025, the public adjusters moved to dismiss the complaint pursuant to Fed. R. Civ. 12(b)(6) arguing that the action is time-barred and that plaintiff failed to comply with Fed. R. Civ. P. 9(b)'s pleading standard. **ECF No. 19**. Plaintiff filed a timely response. **ECF No. 20**. Defendants replied. **ECF No. 23**.[3]

---

[2] Plaintiff does not explain why it did not include the public adjusters as defendants in its 2019 state court complaint. *MAPFRE PRAICO Insurance Company v. Municipio de Barceloneta y otros*, SJ2019CV06866 *consol*. AR2019CV000995.

[3] Plaintiff did not move for leave to file a sur-reply.

## II. Legal Standard

### A. Fed. R. Civ. P. 12(b)

When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P 12(b)(6), courts must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action… [and they] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (cleaned up) (citing, inter alia, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that a defendant has acted unlawfully,' the complaint should be dismissed." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Rodríguez-Reyes*, 711 F.3d at 53, and *Iqbal*, 556 U.S. at 678). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability

that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

### B. Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 9(b) requires that a party alleging "fraud or mistake, must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The "particularity" element requires a party to provide additional details that are not required for general pleadings pursuant to Fed. R. Civ. P. 8, including to "specify the who, what, where, and when of the allegedly false or fraudulent misrepresentation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

## III. Discussion

The public adjusters move for relief pursuant Fed. R. Civ. P. 12(b)(6) arguing that the fraud claims do not meet Fed. R. Civ. P. 9(b)'s pleading standard and that plaintiff's claims are time-barred.

### A. Insurance fraud claims under Puerto Rico tort statute

In essence, plaintiff claims that defendants "manipulate[d] and inflate[d] damage estimates, thereby misrepresenting facts to [plaintiff]'s detriment and loss…" and are, therefore, "liable for fraud…." **ECF No. 20** at 5, 7. In support, plaintiff argues that a public adjuster's "conduct must be reasonable, in good faith, and with the purpose of assisting in the quick, fair, and equitable adjustment of the claim." *Id.*, at 6 (citing P.R. Laws Ann. T. 26, § 951(q)). Also in

support, plaintiff points to the Puerto Rico Insurance Code's ("Insurance Code") provisions that "forbid [public adjusters from] engag[ing] in oral or written material misrepresentations, issue false statements, and/or injure any person in the business of insurance." *Id*.

The public adjusters moved for dismissal arguing that the Court should dismiss the fraud claims because the allegations in the complaint did not meet Fed. R. Civ. P. 9(b)'s heightened pleading standard. **ECF No. 19** at 6-7. Specifically, they argue that the complaint only contains general and conclusory allegations of overestimation of damages and misrepresentations. *Id*. In its opposition, plaintiff argues that the complaint contains sufficient facts to clear Fed. R. Civ. P. 9(b)'s bar. **ECF No. 20**.

Reading the complaint in the light most favorable to the non-movant, the Court notes that plaintiff's theory of tort or fraud liability is that the public adjusters committed fraud (or were negligent) when they "investigated" the extent of the damages, prepared "estimates" thereof, and submitted an "overvalued" proof of loss on Barceloneta's behalf or by assisting the municipality in that task. **ECF No. 1** at 5, 8-10. Because the case sounds in tort, plaintiff needs to show, among other things, a "breach of duty element[,]" which, generally "implies… duty and breach." *Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 49 (1st Cir. 2007). Although plaintiff cites several articles of the Insurance Code for other purposes, it did not point to any statute or provision in Barceloneta's insurance policy requiring the insured to "investigate,"

prepare "estimates" of the damaged property, or submit any "valuation" thereof.[4] Moreover, by giving notice of the loss or damage (the sufficiency of which plaintiff does not challenge), Barceloneta "provide[d] the insurer[] with an opportunity to investigate the claim in order to evaluate potential liability prior to when the obligation to pay arises in order to protect itself from fraudulent or exorbitant claims." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 802 F. Supp. 624, 633 (D.P.R. 1992), *aff'd*, 989 F.2d 36 (1st Cir. 1993).

Regardless and assuming for present purposes that the insured breached a duty that gave rise to a colorable tort claim, the complaint only contains general and conclusory allegations of fraud. As such, it does not comply with Fed. R. Civ. P. 9(b).

With two arguable exceptions, the allegations in the complaint fail to provide specific information of the circumstances that constituted fraud. *See* Fed. R. Civ. P. 9(b). Indeed, the complaint does not point to any particular conduct, act, or omission among the weeks' worth of work performed by the public adjusters over 14 different properties in Barceloneta that constitutes fraud. Neither does plaintiff aver exactly what the overvaluation consisted of, why the public adjusters' calculations were fraudulent, which numbers were cranked up, or what was "misrepresented." Instead, the allegations are overly broad claims of dissatisfaction with

---

[4] To the contrary, the Insurance Code provides that the insurer must conduct the "investigation, adjustment, and resol[ve]… any claim… in the shortest reasonable period of time within the first ninety (90) days after said claim have been submitted to the insurer." P.R. Laws Ann. t. 26, § 2716b. *See also* P.R. Laws Ann. t. 26, § 2716a (establishing as unfair insurance practices "(3) Fail[ing] to adopt and implement reasonable methods for the expeditious investigation of claims which may arise from the terms of a policy. (4) Refus[ing] to pay a claim without carrying out a reasonable investigation based on the information available.").

the opposing party's conduct during the insurance claim process. *See, inter alia*, **ECF No. 1** at 8 (claiming "[e]ach and every action, communication, information and representation taken by the defendants, through [the public adjusters]… was illegal and fraudulent.").

Even the two instances in which plaintiff identified potentially concrete examples of misrepresentations are not exactly Fed. R. Civ. P. 9(b) compliant. To wit, the only "examples" proffered by plaintiff that resemble allegations of particular instances of fraud are those claiming that the public adjusters "estimate[d] the need to replace: (i) a roof treatment that never existed; and (ii) more than 300 windows that never suffered wind related damage." **ECF No. 1** at 5. However, there is no further information related to either the "roof treatment" or the "300 windows." These allegations fail meet the legal standard announced by plaintiff in its response, namely to "show the who, what, where, and when of the allegedly false or fraudulent representation." **ECF No. 20** at 5-6 (quoting *Kopittke v. Dealer Mkt. Exch. PR LLC*, 21-1059 (ADC), 2022 WL 22895016, at *2 (D.P.R. Mar. 31, 2022)).

Finally, the Court notes that one of the few averments that sheds some light on plaintiff's fraud theory is the allegation that by settling the state court action, Barceloneta "agreed… its… property damages were $8,454,805.71, a figure significantly lower to the Municipality's initial demand in the complaint of $60,500,610.07[5] and its initial sworn proofs of loss of $23,093,195.07

---

[5] Plaintiff does not and cannot claim that the amount of damages requested in the state court proceedings constituted an independent act or an act within the defendants' fraudulent scheme. **ECF No. 1**. Aside from the fact that a complaint is not part of the insurance claim process, allowing a claim of fraud based on a judicial filing would run afoul Puerto Rico's well-settled litigation immunity. *Giménez Álvarez v. Silén Maldonado*, 131 D.P.R. 91; 1992 PR Sup. LEXIS 256 ("[I]n our jurisdiction the per se civil damage suit resulting from a civil action does not exist.") (*citing*

and $564,000." **ECF No. 20** at 5. Plaintiff seems to imply that the insurance claim was fraudulent simply because the municipality later agreed to settle for an amount of damages lower than it had originally requested. Even if that logic held water and constituted an actionable tort,[6] this allegation does not provide proper notice to the defendants of the particular circumstances of the alleged fraud as required by Fed. R. Civ. P. 9(b).

In light of the above, the Court finds that the allegations are insufficient. Fed. R. Civ. P. 9(b). Moreover, the Court finds that amending the complaint would be futile for the reasons stated below.

### B.   The statute of limitations

The public adjusters move to have all claims in the complaint dismissed with prejudice on statute of limitation grounds. Specifically, they argue that plaintiff's fraud and misrepresentation claims are tort-based and that, as such, they are subject to a one-year statute of limitation. **ECF No. 19** at 5.[7] Moreover, they argue that plaintiff knew everything it needed to know in order to file a complaint against them as early as July 1, 2019. Accordingly, the public

---

*Commonwealth Loan Corp. v. García*, 96 P.R.R. 755 (1968); *Berríos v. International General Electric*, 88 P.R.R. 106 (1963); *Pereira v. Hernández*, 83 P.R.R. 156 (1961); *Suárez v. Suárez*, 47 P.R.R. 93 (1934); *López de Tord & Zayas Pizarro v. Molina*, 38 P.R.R. 737 (1928)).

[6] If the Court were to allocate fraud based on how far apart the parties' estimates were in relation to the settlement amount, plaintiff would be the party at fault here. To wit, according to the complaint, while the public adjusters estimated the damages in an amount approximately three times higher than the settlement amount, plaintiff's offer was approximately five times lower.

[7] Plaintiff concedes as much. **ECF No. 20** at 9.

adjusters argue, plaintiff's January 3, 2024 communication did not toll the statute of limitations because it had already expired. *Id.*, at 6.

In its response, plaintiff argues that the one-year limitation "commenced on August 23, 2023" when the state court entered judgment based on the parties' settlement. **ECF No. 20** at 3. According to plaintiff, it was at that moment when it had "clear" knowledge of the elements of the unlawful conduct. *See* **ECF No. 20** at 5 ("the submission of overvalued… estimates was clear (sic) upon settlement.…"). In support of this theory, plaintiff cites *Vázquez-Quintana v. Falk*, No. CV 16-3139 (JAG), 2018 WL 8838860 (D.P.R. Sept. 13, 2018) where the District Court "applied the principles" of "*Colegio Mayor de Tecnología v. Rodríguez Fernández*, 194 DPR 635 (2016)." ECF No. 20. It further argues that it tolled the one-year limit via extrajudicial communication on January 3, 2024, making its December 24, 2024 filing timely. *Id*. The Court strongly disagrees.

### (i)     Defendants made no admissions in the state court settlement

Notably, the pillar upon which plaintiff's entire case rests is the notion that the original one-year statute of limitations was triggered by the state court judgment following the parties' announcement of a settlement. **ECF No. 20** at 5. This argument misses the mark by a wide margin.

First, as far as the allegations and representations in the motion practice go, defendants were not a party to the settlement or judgment at issue. *See R. Román & Cía. v. J. Negrón Crespo, Inc.*, 109 D.P.R. 26, (July 16, 1979) (discussing the "general principle of efficient relativity of contracts which establishes that these can only be effective between the executors and their

principals."). Second, plaintiff does not even suggest that the settlement included any acceptance of wrongdoing or that the municipality otherwise accused the public adjusters of any unlawful conduct.[8] Neither did plaintiff cite authority to convince the Court that a party to a settlement admits insurance fraud by accepting via settlement an amount of damages lower than what it had claimed. *See Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 D.P.R. 860 (Feb. 7, 1995) (noting that court settlements usually carry "mutual renunciation."); *see also* Fed. R. Evid. 408. Regardless of the apparent complications with finding the public adjusters liable pursuant to an agreement that they did not execute, the state court settlement is not the trigger of the applicable statute of limitations in this argument.

### (ii) Plaintiff did not need "clear" knowledge of the tort elements

Plaintiff's sole argument against time bar stems from an ill-conceived limitations theory. To wit, that the statute of limitations in a public adjuster's insurance fraud (or tort) case is precipitated not by the well-established "cognitive theory,"[9] but rather when the action's

---

[8] Even though the complaint includes allegations related to the settlement, the agreement was not submitted for the Court's review. *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (explaining that when "allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).")

[9] As the late Honorable Judge Bruce Selya would say, "[i]t is too elementary to warrant citation of authority" that in Puerto Rico the one-year tort statute of limitations begins to accrue from the moment plaintiff has or should have had knowledge of the elements of the tort. *See Rodríguez-Suris v. Montesinos*, 123 F.3d 10, 15 (1st Cir. 1997); *Barretto Peat, Inc. v. Luis Ayala Colón Sucrs., Inc.*, 896 F.2d 656, 658 (1st Cir. 1990).

elements become "clear" to the putative plaintiff by way of settlement and judgment. **ECF No. 20** at 5. Nothing in Puerto Rico law supports that claim.

First, plaintiff admits that the test to determine when the statute of limitations begins to run is "when the injured party has, or reasonably should have, knowledge of the injury and the identity of the party responsible…." **ECF No. 20** at 3. Immediately after identifying the correct test, plaintiff jumps to the conclusion that:

> …only the final, unappealable judgment [issued by the Court of First Instance following the settlement of the consolidated actions] definitively crystallizes the extent of the insurer's damage and establishes that these damages were, in fact, proximately caused by the public adjuster's misconduct. Prior to the issuance of a final judgment, any assertion of damages remains contingent because the insurer might prevail in the underlying litigation or the insured's claim may be granted entirely. Thus, any damages prior to final judgment remains only a potential injury.

**ECF No. 20** at 4. The logic behind this argument is hard to follow, especially considering that the Puerto Rico Supreme Court has always held that a putative plaintiff does not have to know for certain the extent or degree of the damages.[10] *See Ortiz v. Municipio De Orocovis,* 113 P.R. Dec. 484, 487, 13 P.R. Offic. Trans. 619, 622 (1982) ("[o]nce plaintiff had knowledge of the damage he could not nothing wait for his injury to reach its final degree of development and postpone the running of the period of limitation according to his subjective appraisal and judgment."); *Delgado Rodríguez v. Nazario De Ferrer Y Otros,* 121 P.R. Dec. 347, (Official English Translation)

---

[10] There is no challenge or argument from plaintiff claiming that it did not know about the identity of the tortfeasor or that it did not know it had a putative right to seek redress. As a matter of fact, plaintiff's 2019 insurance fraud state court complaint against Barceloneta includes fraud allegations against the public adjusters although not included as defendants . **ECF No. 1** at 6.

(P.R. May 16, 1988) ("'[n]otice of the injury,' as explained in a later case, is established by proof of: some outward or physical signs through which the aggrieved party may become aware and realize that he [or she] has suffered an injurious aftereffect… These circumstances need not be known in order to argue that the damage has become known, because its scope, extent and weight may be established later on during the prosecution of the remedial action.") *see also Fragoso v. López,* 991 F.2d 878, 886 (1st Cir. 1993); *Santiago Hodge v. Parke Davis & Co.,* 909 F.2d 628, 632 (1st Cir. 1990); *Barretto Peat,* 896 F.2d at 658; *Hodge v. Parke Davis & Co.,* 833 F.2d 6, 7 (1st Cir. 1987).

Second, as mentioned above, in support of its reasoning plaintiff only cites *Vázquez-Quintana v. Falk*, 16-3139 (JAG), 2018 WL 8838860 (D.P.R. Sept. 13, 2018), which, in turn, references *Colegio Mayor de Tecnología v. Rodríguez Fernández*, 194 P.R. Dec. 635 (2016). In plaintiff's view, these opinions are "analogously on point." **ECF No. 20** at 4. But, again, plaintiff's proposition is a very hard sell. Even plaintiff admits that *Colegio Mayor de Tecnología,* is a "legal malpractice" case, which has its own set of rules. The Court fails to see any resemblance with the claim here. In *Colegio Mayor de Tecnología* the plaintiff would not have had any colorable malpractice claim against his attorney for losing the case until he, in fact, lost the case. Of course, the same cannot be said here. To the contrary, plaintiff openly admitted that on "July 1, 2019" it filed the state court "insurance fraud case… which was perpetrated and induced by Scott M. Favre and [the public adjusters], as the Municipality's agents…." **ECF No. 1** at 6.

Third, *Vázquez Quintana* is ultimately unhelpful to plaintiff. In *Vázquez Quintana*, the Court made it clear that it "need not decide whether the present suit was time-barred under Puerto Rico law." *Id*., 4-5. It held that the ruling on the statute of limitations was superfluous inasmuch as the case before it lacked all the elements of a tort claim. *Id*., at 8.

In sum, plaintiff's sole argument against dismissal on time bar grounds amounts to a poorly thought-out bid to have this Court deem this case equivalent to an attorney malpractice claim. Plaintiff has thus failed to shoulder its burden. *Rodríguez-Suris*, 123 F.3d at 13 ("Plaintiff bears the burden of proving when the damage became known."). Moreover, considering plaintiff's admission that since 2019 it had knowledge of all the elements necessary to file its insurance fraud case against the public adjusters, the complaint filed on December 24, 2024, is irredeemably time-barred.

## IV. Conclusion

For the reasons stated before, the motion to dismiss at **ECF No. 19** is **GRANTED**. The motions for leave to file a reply and motion submitting reply at **ECF Nos. 22, 23** are **GRANTED**. The Case is dismissed with prejudice. Clerk of Court shall enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 27th day of August, 2025.

                                                      **S/AIDA M. DELGADO-COLÓN**
                                                      **United States District Judge**